## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

—————————————————————————

DALTON TRUCKING, INC., ET AL.        )
                                     )
                                     )
                                     )     No. 13-74019
          Petitioners,               )
                                     )
     v.                              )
                                     )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY and SCOTT          )
PRUITT, ADMINISTRATOR,               )
                                     )
          Respondents.               )
—————————————————————————            )

## RESPONDENT EPA'S MOTION TO CONTINUE ORAL ARGUMENT

Respondents, United States Environmental Protection Agency ("EPA") and

Scott Pruitt, EPA Administrator (collectively, "EPA"), respectfully request that the

Court continue the oral argument currently scheduled for May 18, 2017, on the

petition for review of the final decision issued by EPA under the Clean Air Act

entitled "California State Nonroad Engine Pollution Control Standards; Off-Road

Compression Ignition Engines – In-Use Fleets; Notice of Decision," 78 Fed. Reg.

58,090 (Sept. 20, 2013). The final agency action in dispute (hereafter, "Off-Road

Diesel Decision") is EPA's decision to grant the California Air Resources Board's

("CARB") request for authorization of ARB regulations applicable to in-use fleets that

operate off-road diesel-fueled (compression-ignition) vehicles with engines 25 horsepower and greater. In light of the recent change in Administration, EPA requests continuance of the oral argument to give the appropriate officials adequate time to fully review the Off-Road Diesel Decision. EPA officials are closely reviewing the Off-Road Diesel Decision, and will not complete the review prior to the scheduled oral argument date of May 18, 2017.

Counsel for EPA contacted counsel for Petitioners,[1] Petitioner-Intervenor;[2] and Respondent-Intervenor regarding their positions on this motion. Petitioners and Petitioner-Intervenor do not oppose the motion. Respondent-Intervenor, CARB, opposes the motion.

## BACKGROUND

## I. STATUTORY AND REGULATORY BACKGROUND

The Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q, makes "the States and the Federal Government partners in the struggle against air pollution." *General Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). Among other things, EPA sets

---

[1] Petitioners are: Dalton Trucking, Inc.; Loggers Association of Northern California, Inc.; Robinson Enterprises, Inc.; Nuckles Oil Company, Inc., dba Merit Oil Company; Construction Industry Air Quality Coalition; Western Trucking Association, Inc., formerly California Construction Trucking Association Inc.; Delta Construction Company, Inc.; Southern California Contractors Association, Inc.; Ron Cinquini Farming; and United Contractors.

[2] Petitioner-Intervenor is American Road & Transportation Builders Ass'n ("ARTBA").

national ambient air quality standards, or "NAAQS," for ozone, particulate matter and four other pollutants, and States generally have wide latitude to adopt strategies to ensure that those standards are attained.

While States attain NAAQS through controls on both stationary and mobile sources (*e.g.*, cars, trucks, construction equipment), the CAA approaches state authority to set standards for various sources differently. CAA Title I provides for federal emissions standards for certain stationary sources, but it generally preserves state authority to impose standards that are more stringent than EPA's, *see* CAA section 116, 42 U.S.C. § 7416. By contrast, CAA Title II, which addresses both new automobiles and new and other "nonroad" vehicles and engines,[3] authorizes EPA to promulgate nationally applicable emission standards, 42 U.S.C. §§ 7521, 7547, but generally preempts States from adopting their own standards. *Id.* §§ 7543(a), 7543(e). "The regulatory difference is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states." *Engine Mfrs. Ass'n v. EPA,* 88 F.3d 1075, 1079 (D.C. Cir. 1996).

Even as the CAA generally preempts States' development of mobile source emission standards, it recognizes a special role for California in light of that State's

---

[3] The term "nonroad engines" describes a wide variety of mobile, non-highway engines, including engines used in tractors, lawnmowers, construction equipment such as bulldozers and cranes, locomotives, and marine craft. *See* 40 C.F.R. §§ 89.1, 1068.30.

unique air pollution problems and its historical efforts to develop effective mobile source emission controls.  *See generally Motor & Equip. Mfrs. Ass'n, Inc. v. EPA,* 627 F.2d 1095, 1108-11 (D.C. Cir. 1979) ["*MEMA I*].  In 1967, Congress enacted provisions now codified in 42 U.S.C. §§ 7543(a) and (b), applicable to new motor vehicles.  Congress amended this waiver provision in 1977, and in 1990 it created an analogous provision, modeled on section 7543(a) and (b), for new and in-use (*i.e.*, used) nonroad engines and vehicles.  42 U.S.C. § 7543(e)).

As relevant here, section 7543(e) of the CAA preempts States from adopting standards and requirements for qualifying nonroad engines and vehicles, *except that* California may adopt and enforce such regulations if EPA authorizes it to do so according to specific enumerated criteria.  *Id.* § 7543(e)(2).  For these non-road engines and vehicles, the Act provides:

> [T]he Administrator shall, after notice and opportunity for public hearing, authorize California to adopt and enforce standards and other requirements relating to the control of emissions from such vehicles or engines if California determines that California standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards.  No such authorization shall be granted if the Administrator finds that –
>
> (i) the determination of California is arbitrary and capricious,
>
> (ii) California does not need such California standards to meet compelling and extraordinary conditions, or
>
> (iii) California standards and accompanying enforcement procedures are not consistent with this section [of the Act].

*Id.* § 7543(e)(2)(A).

Thus, under current law, California must determine that its standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards. Once California makes this "protectiveness" determination, EPA must waive preemption for California's nonroad standards unless EPA affirmatively makes at least one of the findings laid out in subsections 7543(e)(2)(A)(i) through (iii). These include the so-called "need test" finding, *i.e.*, "that the State does not need such California standards to meet compelling and extraordinary conditions[.]" 42 U.S.C. § 7543(e)(2)(A)(ii). In this case, the reasonableness of EPA's understanding and application of the "need test" criterion is the central issue before the Court.

## II. FACTUAL BACKGROUND

On March 1, 2012, CARB requested that EPA authorize its regulations to reduce particulate matter ("PM") and oxides of nitrogen ("NOx") emissions from designated in-use off-road diesel-fueled equipment. CARB originally asked EPA to authorize its in-use nonroad diesel fleet regulations in 2008, and it did so again in 2010 following amendments adopted by the State. *See* 73 Fed. Reg. 58,585 (Oct. 7, 2008) and 73 Fed. Reg. 67,509 (Nov. 14, 2008) (2008 CARB proposal); 75 Fed. Reg. 11,880 (Mar. 12, 2010) (2010 CARB proposal). CARB's 2012 request followed 2011

amendments to its nonroad fleet regulations. *See generally* 78 Fed. Reg. 58,090, 58,093 (Sept. 20, 2013).

CARB's Fleet Requirements are designed to reduce PM and NOx emissions from in-use nonroad diesel fleet engines with a maximum power of 25 horsepower ("hp") or greater. *See* 78 Fed. Reg. at 58,091. Such fleets must meet fleet average NOx and PM emissions standards or, alternatively, comply with best available control technology ("BACT") requirements for the vehicles in those fleets. *Id.* CARB's Fleet Requirements set "performance requirements" that include phased-in compliance deadlines to meet compliance options (e.g. large fleets are required to meet performance requirements phased in between July 1, 2014 through 2023 and small fleets between 2019 and 2028).

EPA announced an opportunity for public hearing and invited comments on CARB's Fleet Requirements on August 21, 2012, 77 Fed. Reg. 50,500 (Aug. 21, 2012), and held a public hearing on CARB's request on September 20, 2012. 78 Fed. Reg. at 58,093. Comments were received from counsel for ARTBA, Dalton, and other individual Petitioners, during this time. *See id.* at 58,094 n.29 (listing written comments). On September 20, 2013, EPA authorized California's Fleet Requirements, finding that the grounds needed to disapprove California's standards under section 7543(e)(2)(A) were not met. 78 Fed. Reg. at 58,091, 58,097, 58,111-19.

Petitioners timely challenged EPA's Off-Road Diesel Decision in this Court on November 19, 2013. Petitioners and ARTBA also timely challenged the Off-Road Diesel Decision in the D.C. Circuit. EPA moved to dismiss or transfer Petitioners' instant petition while Petitioners and ARTBA similarly challenged the D.C. Circuit's venue. On December 18, 2015, the D.C. Circuit ruled that it lacked venue, *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875 (D.C. Cir. 2015), and based on this ruling, this Court subsequently dismissed EPA's motion to dismiss at EPA's request. Dkt. 24.

EPA filed its merits brief in this Court on November 10, 2016. The Court has scheduled oral argument for May 18, 2017. At this time, however, EPA officials appointed by the new Administration are closely reviewing the Off-Road Diesel Decision to determine whether the Agency should reconsider its action in whole or in part.

## ARGUMENT

Agencies have inherent authority to review past decisions and to revise, replace or repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("*State Farm*"). EPA's interpretations of statutes it administers are not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967,

7

981 (2005) (internal quotation marks and citations omitted). *See also Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 & 1043 (D.C. Cir. 2012) (a revised rulemaking based "on a reevaluation of which policy would be better in light of the facts" is "well within an agency's discretion," and "'[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations'") (quoting *State Farm*, 463 U.S. at 59 (Rehnquist, J., concurring in part and dissenting in part )).

EPA requests that the Court continue the oral argument currently scheduled for May 18, 2017, in this matter to allow the new Administration adequate time to review the Off-Road Diesel Decision to determine whether it will be reconsidered. This continuance is appropriate because recently-appointed EPA officials in the new Administration will be closely scrutinizing the Off-Road Diesel Decision to determine whether it should be maintained, modified, or otherwise reconsidered.  The Agency needs sufficient time to complete this review in an orderly fashion because the EPA's administrative record for the Off-Road Diesel Decision incorporates the earlier administrative record compiled by CARB in the course of its promulgation of its Fleet Requirements.  These records are extensive and encompass a large body of scientific and technical evidence. As reflected in the parties' briefs, the Off-Road Diesel Decision implicates significant legal and policy issues about an agency action with

national significance, and one which raises issues that new EPA officials deserve time to carefully review.

Continuance is also warranted to avoid holding oral argument in the midst of the new Administration's review of the Off-Road Diesel Decision. Were the Court to hold oral argument as scheduled on May 18, 2017, counsel for EPA would likely be unable to represent the current Administration's conclusive position on the Off-Road Diesel Decision. Nor would it be proper for counsel for EPA to speculate as to the likely outcome of the current Administration's review.

Finally, to the extent that EPA ultimately elects to reconsider all or part of the Off-Road Diesel Decision, continuing the oral argument would conserve the resources of the parties and the Court. Accordingly, to permit the Agency's review to proceed in an orderly fashion, EPA requests that the oral argument be continued.

## **CONCLUSION**

WHEREFORE, EPA respectfully requests that the Court order the following: (1) that the oral argument currently scheduled for May 18, 2017 is continued; (2) that EPA is directed to file a status update in these consolidated cases within 90 days of the Court's order granting a continuance and every 90 days thereafter; and (3) that within 30 days of EPA notifying the court and the parties of any action it has or will be taking with respect to the Off-Road Diesel Decision, the parties are directed to file motions to govern future proceedings in this matter.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources
Division


/s/ Joshua M. Levin
JOSHUA M. LEVIN
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044
Tel:  (202) 514-4198
Fax: (202) 514-8865

Counsel for Respondent

Of Counsel:

WINIFRED OKOYE
Office of General Counsel
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

May 5, 2017

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 27(D)**

I certify that this filing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,071 words, excluding the parts of the motion exempted under Fed. R. App. P. 32(f), according to the count of Microsoft Word.

/s/ Joshua M. Levin
JOSHUA M. LEVIN

# CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2017, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by

using the CM/ECF system, which sent notification of such filing to the attorneys of

record for each party, who have registered with the Court's CM/ECF system.

 s/ Joshua M. Levin
JOSHUA M. LEVIN
Attorney
Environmental Defense Section
U.S. Department of Justice
Attorney for Respondent